# UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PRENTICE RAY THOMAS,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>NEWSOM, *et al.*,<br><br>　　　　Defendants. | Case No. 1:23-cv-00622-BAM (PC)<br><br>ORDER DIRECTING CLERK OF COURT TO RANDOMLY ASSIGN DISTRICT JUDGE TO ACTION<br><br>FINDINGS AND RECOMMENDATIONS TO DISMISS ACTION, WITH PREJUDICE, FOR FAILURE TO STATE A CLAIM, FAILURE TO OBEY COURT ORDERS, AND FAILURE TO PROSECUTE<br><br>(ECF Nos. 7, 9, 11)<br><br>**FOURTEEN (14) DAY DEADLINE** |

**I.   Background**

Plaintiff Prentice Ray Thomas ("Plaintiff") is a county jail inmate and former state prisoner proceeding *pro se* and *in forma pauperis* in this civil rights action under 42 U.S.C. § 1983.

On September 13, 2023, the Court issued a screening order granting Plaintiff leave to file a first amended complaint or a notice of voluntary dismissal within thirty (30) days. (ECF No. 7.) The Court expressly warned Plaintiff that the failure to comply with the Court's order would result in a recommendation for dismissal of this action, with prejudice. (*Id.* at 10.) The Court granted Plaintiff several extensions of time. (ECF Nos. 9, 11.) The extended deadline has

1

expired, and Plaintiff has failed to file an amended complaint or otherwise communicate with the Court.

## II.	Failure to State a Claim

### A.	Screening Requirement

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity and/or against an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). Plaintiff's complaint, or any portion thereof, is subject to dismissal if it is frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915A(b).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*citing Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted).

To survive screening, Plaintiff's claims must be facially plausible, which requires sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678 (quotation marks omitted); *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009). The sheer possibility that a defendant acted unlawfully is not sufficient, and mere consistency with liability falls short of satisfying the plausibility standard. *Iqbal*, 556 U.S. at 678 (quotation marks omitted); *Moss*, 572 F.3d at 969.

### B.	Plaintiff's Allegations

Plaintiff is a county jail inmate currently housed at the Lower Buckeye Jail in Phoenix, Arizona. The events in the complaint are alleged to have occurred while Plaintiff was housed at Wasco State Prison ("WSP") in Wasco, California. Plaintiff names the following defendants: (1) Gavin Newsom, Governor of the State of California; (2) Heather Shirley, Warden at WSP; (3) State of California; and (4) Scott Degough, Plant Operator at WSP.

1  Plaintiff alleges as follows:

2  On February 6, 2023, the State of California, WSP, and Defendant Scott Degough posted a notice in C-Yard about the contamination levels of Trichloropropane in Well #1 and Well #2, the source of all WSP prisoners' drinking water. The levels of Trichloropropane ("1,2,3-TCP") is equivalent to 0.005 ug/L (micrograms per liter) of water. First quarter 2023 showed 1,2,3-TCP levels ranging from 0.008 ug/L, the maximum contaminant level ("MCL"), and this puts the state in violation of Health and Safety Code Section 116450(g). Contamination levels are above the standard for 1,2,3-TCP, in excess of the MCL will in time put a person at risk of getting cancer or tapeworms.

The intentional violation of Health and Safety Code 116450(g) from the man-made pollutant 1,2,3-TCP has been noted by WSP to be hazardous, and the likelihood of drinking this chemical will have a harmful affect. These living conditions are unsanitary and in violation of Plaintiff's constitutional rights and deliberately indifferent to Plaintiff's health. After 30 days of drinking water that has been polluted with 1,2,3-TCP, prisoners start to have skin outbreaks, neurological issues, and in most cases prisoners have passed out from drinking large sums of water that have been polluted with 1,2,3-TCP. Subsequently, the State of California or WSP has not taken any approach to the unconstitutional living condition. 1,2,3-TCP has left Plaintiff's skin pilling, itching, and discolored.

1,2,3-TCP is a colorless or straw-colored chemical compound which is slightly soluble in water and produced by the chlorination of propylene or the addition of chlorine to certain organic and inorganic compounds. TCP is a man-made pollutant that can be found at industrial and hazardous waste sites. Prison officials are obligated to provide sufficient water, and it must be fit to drink. Because of the unsafe drinking water, Plaintiff has a skin outbreak and has passed out and hit his head because of how the pollutant has mixed with his medication.

WSP is also subjecting Plaintiff to black, gray, and white mold as well as leaks in the roof of building C-3. The unconstitutional living conditions do not receive any attention from the prison personnel. WSP has failed to act on these violations of safety code. Plaintiff has been living with mold build up in the corner of his bed for over 60 days and it has affected his

breathing.

Plaintiff seeks compensatory, punitive, and exemplary damages.

**C.     Discussion**

Plaintiff's complaint fails to comply with Federal Rules of Civil Procedure 8, 18, and 20, and fails to state a cognizable claim for relief.

**1.     Federal Rule of Civil Procedure 8**

Pursuant to Federal Rule of Civil Procedure 8, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citation omitted). Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). While factual allegations are accepted as true, legal conclusions are not. *Id.*; *see also Twombly*, 550 U.S. at 556–57; *Moss*, 572 F.3d at 969.

Here, Plaintiff's complaint is short, but it is not a plain statement of his claims showing that he is entitled to relief. Many of Plaintiff's allegations, especially related to his claims about mold in his bed area, are conclusory and Plaintiff does not identify when the incidents occurred or who was involved. In any amended complaint, Plaintiff should state what happened, when it happened, and who was involved.

**2.     Linkage**

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of [state law] . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution . . . shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. The statute plainly requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by Plaintiff. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978); *Rizzo v. Goode*, 423 U.S. 362 (1976). The Ninth Circuit has held that "[a] person 'subjects another to the deprivation of a constitutional

4

1  right, within the meaning of section 1983, if he does an affirmative act, participates in another's

2  affirmative acts or omits to perform an act which he is legally required to do that causes the

3  deprivation of which complaint is made." *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978).

4      Plaintiff alleges only that Defendant Degough posted a notice regarding the contaminated

5  drinking water at WSP.  Plaintiff does not allege that any other defendant took or failed to take

6  any other action regarding the contaminated drinking water.  Plaintiff also fails to link any

7  defendant to his claims regarding mold.

8      **3.**    **Federal Rules of Civil Procedure 18 and 20**

9      Plaintiff may not bring unrelated claims against unrelated parties in a single action.  Fed.

10  R. Civ. P. 18(a), 20(a)(2); *Owens v. Hinsley*, 635 F.3d 950, 952 (7th Cir. 2011); *George v. Smith*,

11  507 F.3d 605, 607 (7th Cir. 2007).  Plaintiff may bring a claim against multiple defendants so

12  long as (1) the claim arises out of the same transaction or occurrence, or series of transactions and

13  occurrences, and (2) there are commons questions of law or fact.  Fed. R. Civ. P. 20(a)(2);

14  *Coughlin v. Rogers*, 130 F.3d 1348, 1351 (9th Cir. 1997).  The "same transaction" requirement

15  refers to similarity in the factual background of a claim.  *Id.* at 1349.  Only if the defendants are

16  properly joined under Rule 20(a) will the Court review the other claims to determine if they may

17  be joined under Rule 18(a), which permits the joinder of multiple claims against the same party.

18      Plaintiff may not raise different claims against different defendants in a single action.  For

19  instance, Plaintiff may not, in a single case, assert a claim related to contaminated drinking water

20  while simultaneously asserting a claim related to a leaking roof and mold in his bed area

21  (presumably against a different set of defendants), even though both claims arose while Plaintiff

22  was housed at the same institution.  Unrelated claims involving different defendants belong in

23  different suits.

24      **4.**    **Eleventh Amendment Immunity**

25      Plaintiff appears to be attempting to sue defendants for monetary damages in their official

26  and individual capacities.  "Suits against state officials in their official capacity . . . should be

27  treated as suits against the State." *Hafer v. Melo*, 502 U.S. 21, 25 (1991); *Holley v. Cal. Dep't of*

28  *Corr.*, 599 F.3d 1108, 1111 (9th Cir. 2010) (treating prisoner's suit against state officials in their

official capacities as a suit against the state of California). An official capacity suit "represent[s] only another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (citation omitted). Such a suit "is not a suit against the official personally, for the real party in interest is the entity." *Id.* at 166 (emphasis in original).

"The Eleventh Amendment bars suits for money damages in federal court against a state, its agencies, and state officials acting in their official capacities." *Aholelei v. Dep't of Public Safety*, 488 F.3d 1144, 1147 (9th Cir. 2007). Indeed, the Eleventh Amendment prohibits federal courts from hearing a Section 1983 lawsuit in which damages or injunctive relief is sought against a state, its agencies (such as CDCR) or individual prisons, absent "a waiver by the state or a valid congressional override. . . ." *Dittman v. California*, 191 F.3d 1020, 1025 (9th Cir. 1999). "The Eleventh Amendment bars suits which seek either damages or injunctive relief against a state, 'an arm of the state,' its instrumentalities, or its agencies." *See Fireman's Fund Ins. Co. v. City of Lodi, Cal.*, 302 F.3d 928, 957 n.28 (9th Cir. 2002) (internal quotation and citations omitted), cert. denied, 538 U.S. 961 (2003). "The State of California has not waived its Eleventh Amendment immunity with respect to claims brought under § 1983 in federal court. . . ." *Dittman*, 191 F.3d at 1025–26 (citing *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 241 (1985)); *see also Brown v. Cal. Dep't. of Corrs.*, 554 F.3d 747, 752 (9th Cir. 2009) (finding California Department of Corrections and California Board of Prison Terms entitled to Eleventh Amendment immunity).

Therefore, Plaintiff cannot pursue claims for damages or injunctive relief against the State of California or Governor Newsom in this action. Plaintiff's claim for monetary damages against the named defendants in their official capacities also are barred by the Eleventh Amendment.

### 5. Supervisory Liability

Insofar as Plaintiff is attempting to sue the Governor, Warden, or any other defendant, based *solely* upon his or her supervisory role, he may not do so. Liability may not be imposed on supervisory personnel for the actions or omissions of their subordinates under the theory of respondeat superior. *Iqbal*, 556 U.S. at 676–77; *Simmons v. Navajo Cty., Ariz.*, 609 F.3d 1011, 1020–21 (9th Cir. 2010); *Ewing v. City of Stockton*, 588 F.3d 1218, 1235 (9th Cir. 2009); *Jones v.*

1  *Williams*, 297 F.3d 930, 934 (9th Cir. 2002).

2  Supervisors may be held liable only if they "participated in or directed the violations, or
3  knew of the violations and failed to act to prevent them." *Taylor v. List*, 880 F.2d 1040, 1045
4  (9th Cir. 1989*); accord Starr v. Baca*, 652 F.3d 1202, 1205–06 (9th Cir. 2011); *Corales v.*
5  *Bennett*, 567 F.3d 554, 570 (9th Cir. 2009). "The requisite causal connection may be established
6  when an official sets in motion a 'series of acts by others which the actor knows or reasonably
7  should know would cause others to inflict' constitutional harms." *Corales v. Bennett*, 567 F.3d at
8  570. Supervisory liability may also exist without any personal participation if the official
9  implemented "a policy so deficient that the policy itself is a repudiation of the constitutional
10 rights and is the moving force of the constitutional violation." *Redman v. Cty. of San Diego*, 942
11 F.2d 1435, 1446 (9th Cir. 1991) (citations and quotations marks omitted), abrogated on other
12 grounds by *Farmer v. Brennan*, 511 U.S. 825 (1970). When a defendant holds a supervisory
13 position, the causal link between such defendant and the claimed constitutional violation must be
14 specifically alleged. *See Fayle v. Staple*y, 607 F.2d 858, 862 (9th Cir. 1979); *Mosher v. Saalfeld*,
15 589 F.2d 438, 441 (9th Cir. 1978). Vague and conclusory allegations concerning the involvement
16 of supervisory personnel in civil rights violations are not sufficient. *See Ivey v. Board of Regents*,
17 673 F.2d 266, 268 (9th Cir. 1982).

18 As pled, Plaintiff fails to state a claim against any defendant based on their supervisory
19 roles. While Plaintiff alleges that Defendant Scott Degough (together with the State of California
20 and WSP) posted a notice regarding the contamination levels of 1,2,3-TCP in the drinking water
21 for WSP prisoners, Plaintiff does not allege whether any defendant took any action, or failed to
22 take any action, to correct the drinking water after the notice was posted. Plaintiff also does not
23 allege that any defendant was aware of the water contamination prior to the notice being posted.

24 **6.    Eighth Amendment – Conditions of Confinement**

25 The Eighth Amendment protects prisoners from inhumane methods of punishment and
26 from inhumane conditions of confinement. *Farmer v. Brennan*, 511 U.S. 825 (1994); *Morgan v.*
27 *Morgensen*, 465 F.3d 1041, 1045 (9th Cir. 2006). Thus, no matter where they are housed, prison
28 officials have a duty to ensure that prisoners are provided adequate shelter, food, clothing,

7

1 sanitation, medical care, and personal safety. *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir.
2 2000) (quotation marks and citations omitted).  To establish a violation of the Eighth
3 Amendment, the prisoner must "show that the officials acted with deliberate indifference . . ."
4 *Labatad v. Corrs. Corp. of Amer.*, 714 F.3d 1155, 1160 (9th Cir. 2013) (citing *Gibson v. Cty. of*
5 *Washoe*, 290 F.3d 1175, 1187 (9th Cir. 2002)).

6       The deliberate indifference standard involves both an objective and a subjective prong.
7 First, the alleged deprivation must be, in objective terms, "sufficiently serious." *Farmer*, 511
8 U.S. at 834.  Second, subjectively, the prison official must "know of and disregard an excessive
9 risk to inmate health or safety." *Id.* at 837; *Anderson v. Cty. of Kern*, 45 F.3d 1310, 1313 (9th
10 Cir. 1995).

11       Objectively, extreme deprivations are required to make out a conditions-of-confinement
12 claim and only those deprivations denying the minimal civilized measure of life's necessities are
13 sufficiently grave to form the basis of an Eighth Amendment violation. *Hudson v. McMillian*,
14 503 U.S. 1, 9 (1992).  Although the Constitution "'does not mandate comfortable prisons,'"
15 *Wilson v. Seiter*, 501 U.S. 294, 298 (1991), "inmates are entitled to reasonably adequate
16 sanitation, personal hygiene, and laundry privileges, particularly over a lengthy course of time,"
17 *Howard v. Adkison*, 887 F.2d 134, 137 (8th Cir. 1989).

18       Courts have long recognized that exposure to environmental conditions which pose a
19 health risk, either present or future, can support a claim under the Eighth Amendment. *Helling v.*
20 *McKinney*, 509 U.S. 25, 3335 (1993) (environmental tobacco smoke); *Wallis v. Baldwin*, 70 F.3d
21 1074, 1076 (9th Cir. 1995) (asbestos); *Carter v. Smith*, No. C–13–4373 EMC (pr), 2015 WL
22 4322317, at *7–11 (N.D. Cal. 2015) (lead paint and asbestos); *Yellen v. Olivarez*, No. CIV S–94–
23 1298 GEB DAD P, 2012 WL 3757373, at *8 (E.D. Cal. 2012) (contaminated water), *adopted in*
24 *full*, 2012 WL 4210030 (E.D. Cal. 2012); *Rouse v. Caruso*, No. 06–CV–10961–DT, 2011 WL
25 918327, at *24–25 (E.D. Mich. 2011) (contaminated water), *adopted in full*, 2011 WL 893216
26 (E.D. Mich. 2011).

27 ///
28 ///

        Contaminated Drinking Water

        Plaintiff may be able to state a claim related to the contaminated drinking water. However, based on the allegations in the complaint, Plaintiff has not alleged that any defendant was aware of the problem before the February 6, 2023 notice was posted, or whether any defendant then took action (or failed to take action) either before or after the notice was posted.

        Mold from Leaking Roof

        Plaintiff may also be able to state a claim related to mold in his bed area due to a leaking roof. However, Plaintiff has not linked this claim to any of the named defendants, and it is not clear whether he notified anyone about the mold in his cell. In addition, this claim does not appear to be properly joined.

### 7.     Exhaustion of Administrative Remedies

        Section 1997e(a) of the Prison Litigation Reform Act of 1995 ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Prisoners are required to exhaust the available administrative remedies prior to filing suit. *Jones v. Bock*, 549 U.S. 199, 211 (2007); *McKinney v. Carey*, 311 F.3d 1198, 1199-1201 (9th Cir. 2002). Exhaustion is required regardless of the relief sought by the prisoner and regardless of the relief offered by the process, *Booth v. Churner*, 532 U.S. 731, 741 (2001), and the exhaustion requirement applies to all prisoner suits relating to prison life, *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

        Here, Plaintiff states with respect to his claim about mold that while there are administrative remedies available at his institution and he submitted a request for administrative relief for this claim, he did not appeal his request for relief to the highest level. (ECF No. 1, p. 6.) Plaintiff does not explain why he did not appeal to the highest level.

///

///

///

**III.     Failure to Prosecute and Failure to Obey a Court Order**

     **A.     Legal Standard**

Local Rule 110 provides that "[f]ailure . . . of a party to comply with these Rules or with any order of the Court may be grounds for imposition by the Court of any and all sanctions . . . within the inherent power of the Court." District courts have the inherent power to control their dockets and "[i]n the exercise of that power they may impose sanctions including, where appropriate, . . . dismissal." *Thompson v. Hous. Auth.*, 782 F.2d 829, 831 (9th Cir. 1986). A court may dismiss an action, with prejudice, based on a party's failure to prosecute an action, failure to obey a court order, or failure to comply with local rules. *See, e.g.*, *Ghazali v. Moran*, 46 F.3d 52, 53–54 (9th Cir. 1995) (dismissal for noncompliance with local rule); *Ferdik v. Bonzelet*, 963 F.2d 1258, 1260–61 (9th Cir. 1992) (dismissal for failure to comply with an order requiring amendment of complaint); *Malone v. U.S. Postal Serv.*, 833 F.2d 128, 130–33 (9th Cir. 1987) (dismissal for failure to comply with court order).

In determining whether to dismiss an action, the Court must consider several factors: (1) the public's interest in expeditious resolution of litigation; (2) the Court's need to manage its docket; (3) the risk of prejudice to the defendants; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions. *Henderson v. Duncan*, 779 F.2d 1421, 1423 (9th Cir. 1986); *Carey v. King*, 856 F.2d 1439, 1440 (9th Cir. 1988).

     **B.     Discussion**

Here, Plaintiff's first amended complaint is overdue, and he has failed to comply with the Court's order. The Court cannot effectively manage its docket if Plaintiff ceases litigating his case. Thus, the Court finds that both the first and second factors weigh in favor of dismissal.

The third factor, risk of prejudice to defendant, also weighs in favor of dismissal, since a presumption of injury arises from the occurrence of unreasonable delay in prosecuting an action. *Anderson v. Air W.*, 542 F.2d 522, 524 (9th Cir. 1976). The fourth factor usually weighs against dismissal because public policy favors disposition on the merits. *Pagtalunan v. Galaza*, 291 F.3d 639, 643 (9th Cir. 2002). However, "this factor lends little support to a party whose responsibility it is to move a case toward disposition on the merits but whose conduct impedes

progress in that direction," which is the case here. *In re Phenylpropanolamine (PPA) Products Liability Litigation*, 460 F.3d 1217, 1228 (9th Cir. 2006) (citation omitted).

Finally, the Court's warning to a party that failure to obey the court's order will result in dismissal satisfies the "considerations of the alternatives" requirement. *Ferdik*, 963 F.2d at 1262; *Malone*, 833 at 132–33; *Henderson*, 779 F.2d at 1424. The Court's September 13, 2023 screening order and October 17, 2023 and November 28, 2023 orders granting Plaintiff's motions for extension of time expressly warned Plaintiff that his failure to file an amended complaint would result in a recommendation of dismissal of this action, with prejudice, for failure to obey a court order and for failure to state a claim. (ECF No. 7, p. 10; ECF No. 9, p. 2; ECF No. 11, p. 2.) Thus, Plaintiff had adequate warning that dismissal could result from his noncompliance.

Additionally, at this stage in the proceedings there is little available to the Court that would constitute a satisfactory lesser sanction while protecting the Court from further unnecessary expenditure of its scarce resources. As Plaintiff is proceeding *in forma pauperis* in this action, it appears that monetary sanctions will be of little use and the preclusion of evidence or witnesses is likely to have no effect given that Plaintiff has ceased litigating his case.

## IV. **Conclusion and Recommendation**

Accordingly, the Court HEREBY ORDERS the Clerk of the Court to randomly assign a district judge to this action.

Furthermore, the Court finds that dismissal is the appropriate sanction and HEREBY RECOMMENDS that this action be dismissed, with prejudice, for failure to state a claim pursuant to 28 U.S.C. § 1915A, for failure to obey court orders, and for Plaintiff's failure to prosecute this action.

These Findings and Recommendation will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within **fourteen (14) days** after being served with these Findings and Recommendation, Plaintiff may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Plaintiff is advised that failure to file objections within the specified time may result in the waiver of the "right to challenge the magistrate's factual

findings" on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:  **January 16, 2024**            /s/ Barbara A. McAuliffe            _
                                        UNITED STATES MAGISTRATE JUDGE